Gregory M. Garrison, Esq. SBN 165215
Julia M. Williams, Esq. SBN 244400
TEEPLE HALL, LLP
9255 Towne Centre Drive, Suite 500
San Diego, CA 92121
Telephone:   (858) 622-7878
Facsimile:   (858) 622-0411
E-mails:      greg@teeplehall.com
             julia@teeplehall.com

Attorneys for Plaintiff DAVID BRODMANN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID N. BRODMANN,<br><br>         Plaintiff,<br><br>    vs.<br><br>SALVATION ARMY, INC., a<br>California corporation;<br>MARK NELSON, an individual; and,<br>DOES 1 through 100, inclusive,<br><br>         Defendants. | Case No.<br><br>**PLAINTIFF DAVID N. BRODMANN'S CLAIMS FOR RELIEF FOR:**<br><br>**1) WRONGFUL TERMINATION IN VIOLATION PUBLIC POLICY (U.S.C. §1981)**<br>**2) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (ARTICLE I, §§ 4 AND 8 OF THE CALIFORNIA CONSTITUTION)**<br>**3) HOSTILE WORK ENVIRONMENT IN VIOLATION OF U.S.C. §1981**<br>**4) RETALIATION BASED ON RACE IN VIOLATION OF U.S.C. §1981**<br>**5) RETALIATION BASED ON RACE IN VIOLATION OF U.S.C. §1981**<br><br>**DEMAND FOR TRIAL BY JURY** |

Teeple Hall, LLP

1

# <u>INTRODUCTION</u>

Defendant the Salvation Army ("Salvation Army") operated a business rife with sexual harassment and a uniquely atrocious type of discrimination towards African-American, Latino and female employees.  Plaintiff, David N. Brodmann, a Salvation Army Supervisor, suffered persistent sexual harassment from his supervisor, Salvation Army Major Mark Nelson, which included Mark Nelson sending Plaintiff a song he personally recorded about a young handicapped girl who dropped a vibrator in church.  Major Nelson also ordered Plaintiff to fire Salvation Army employees, all of whom were minorities, based upon their race.  When Plaintiff refused to participate in the discrimination and sexual harassment, he was fired under false pretense.

# <u>GENERAL ALLEGATIONS</u>

**The Mission Of The Salvation Army And Its Adult Rehabilitation Centers**

1.     According to the Salvation Army website, the Salvation Army is an international Christian organization and part of the Universal Christian Church whose message is based on the Bible and rooted in the Christian faith of its members.

2.     According to the Salvation Army website, the Salvation Army's Adult Rehabilitation Centers ("ARC") comprise the largest residential drug and alcohol rehabilitation program in the United States.  The program is free to people suffering from drug or alcohol addiction and financed through profits realized from Salvation Army Retail Thrift Stores.

3.     According to the Salvation Army website, the ARC ministries in the United States provide an in-residence rehabilitation program with a focus on providing basic necessities and teaching life skills.  Each program participant, known as a "beneficiary", is provided with a clean living environment, good food, work therapy, leisure time activities, group and individual counseling, spiritual

Brodmann v. Salvation Army, Inc., et al.                                                    Case No.
Claims for Relief and Demand for Jury Trial

Teeple Hall, LLP

direction, and resources to assist the beneficiary in developing a personal relationship with God.

4.     Despite the purity of its mission, at all relevant times the Salvation Army was an organization rife with sexual harassment and racial discrimination which protected senior staff, called "officers", from a known pattern of illegal and discriminatory behavior against Salvation Army employees and beneficiaries and punished Supervisors who refused to participate in the illegal and discriminatory conduction with termination.

## THE PARTIES

### Plaintiff

5.     At all times relevant, Plaintiff David N. Brodmann ("Plaintiff" and/or "Mr. Brodmann") was an individual, living and residing in Murrieta, Riverside County, California.  Mr. Brodmann wanted to work at the Salvation Army because, among other things, he was attracted to the Salvation Army's mission of service as described in the Salvation Army website.

6.     Prior to working at the Salvation Army, Mr. Brodmann had a history of success managing large retail stores in Southern California.  At all relevant times Mr. Brodmann was married with children and a devout Christian.

7.     Mr. Brodmann began to work for Defendant Salvation Army as a Director of Retail in March 2011.  Mr. Brodmann competently performed his job duties and received excellent reviews and promotions until he was terminated by Defendant Salvation Army on or about July 19, 2014.

8.     Prior to filing suit, Plaintiff obtained a Right to Sue letter from United States Equal Employment Opportunity Commission, a true and correct copy of which is attached hereto as Exhibit "A".

### Defendants

9.     At all times relevant, Defendant Mark Nelson ("Defendant Nelson") was employed by the Salvation Army and was an officer in the Salvation Army.

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

Teeple Hall, LLP

Defendant Nelson was at all times mentioned herein acting within the course and scope of his duties for Defendant Salvation Army, and in the course of acting as such, it was foreseeable that part of his duties were to interact with persons similarly situated to Plaintiff.  Accordingly, Defendant Salvation Army is liable for all of Defendant Nelson's wrongful conduct under the doctrine of *Respondeat Superior*.

10.    Plaintiff is informed and believes and thereupon alleges that Defendant Nelson has been disciplined by the Salvation Army due to a pattern of racial discrimination and sexual harassment he practiced against Salvation Army employees and/or beneficiaries.

11.    Plaintiff is informed and believes and on those grounds alleges that Defendant Salvation Army at all times relevant hereto was a California Corporation with headquarters in the City of Long Beach, County of Los Angeles, State of California making jurisdiction and venue proper in the United States District Court for the Central District of California.

12.    Plaintiff is ignorant of the true names and capacities, whether corporate, individual, partnership, association or otherwise, of Defendants sued herein as fictitious DOES 1 through 100, inclusive and, therefore, sues these Defendants by such fictitious names.  Plaintiff will amend this claims for relief to allege the true names and capacities of defendants DOES 1 through 100 when ascertained.

13.    Whenever in this claims for relief reference is made to "Defendants," such allegation shall be deemed to mean the acts of all Defendants acting individually, jointly and/or severally.

14.    Plaintiff is informed and believes, and thereon alleges that, each of the fictitiously named Defendants has contributed in some manner to Plaintiff's damages as hereinafter alleged.

15.    Plaintiff is informed and believes and based upon such information and belief alleges that at all times mentioned, each of the Defendants was the agent and

Brodmann v. Salvation Army, Inc., et al.                                      Case No.
Claims for Relief and Demand for Jury Trial

employee of each of their Co-Defendants and in doing the things herein mentioned, were acting within the scope of their authority as such agents and employees and with the permission and consent of their Co-Defendants.

16.    The allegations sued upon herein occurred in Los Angeles County, California making jurisdiction and venue proper in the Central District of California.

### Facts Common to All Allegations

17.    In 2009, Defendant Nelson was promoted from his position as Supervisor of the Salvation Army's Bakersfield ARC to supervisor the Salvation Army's Covina and Pasadena locations.  Plaintiff's direct supervisor was Defendant Nelson.

18.    Defendant Nelson was the head Administrator at the Salvation Army Pasadena ARC and promoted to second in command for the Salvation Army Western Territory during Plaintiff's employment with the Salvation Army.

19.    Plaintiff is informed and believes and thereon alleges that prior to working at the Pasadena/Covina locations, Defendant Nelson worked at another Salvation Army in Bakersfield where he engaged in sexual harassment and racial discrimination against Salvation Army employees and/or beneficiaries.  Plaintiff is further informed and believes and thereon alleges that Defendant Salvation Army's response to Defendant Nelson's sexual harassment and racial discrimination was to transfer him to the Pasadena/Covina Salvation Army locations, where Defendant Nelson continued his practice of sexual harassment and racial discrimination against Plaintiff and other Salvation Army employees.

/ / /

/ / /

/ / /

/ / /

/ / /

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

**Defendant Nelson Created a Hostile Work Environment Through Illegal Sexual and Racial Discrimination**

***A. Nelson Subjected Plaintiff to Unwanted and Unwelcome Sexual Jokes During the Course of His Employment with the Salvation Army***

20.     Defendant Nelson continually and repeatedly subjected Plaintiff to unwanted sexual jokes, comments and innuendo. Defendant Nelson's inappropriate sexual comments and jokes were persistent throughout Plaintiff's employment with the Salvation Army.

21.     Some of Defendant Nelson's sexual comments concerned Karen Lycan ("Ms. Lycan"), Salvation Army's Director of Rehabilitation Services. Defendant Nelson made inappropriate sexual comments concerning Ms. Lycan on a consistent basis to Plaintiff until Ms. Lycan's termination.  Defendant Nelson told Plaintiff that Ms. Lycan was "always looking to seduce the beneficiaries" and that Ms. Lycan "sometimes doesn't wear underwear and spreads her legs at her desk." Defendant Nelson frequently commented on Ms. Lycan's cleavage and clothing, and often asked Plaintiff if he thought Ms. Lycan "looked like a hooker."  Plaintiff informed Defendant Nelson on numerous occasions that he was not comfortable with these conversations, and requested that Defendant Nelson stop.

22.     When Plaintiff asked Defendant Nelson why he did not speak to Ms. Lycan about her attire, Defendant Nelson responded "Mark Fulton (Salvation Army Director of Retail Stores in the Riverside ARC) asked me the same thing. I don't need the aggravation. Plus, it gives me something to look at."

23.     In mid-Fall of 2011, Plaintiff was informed by a Salvation Army beneficiary, who was living in the men's rehabilitation residence in Pasadena, that Ms. Lycan was having sex with beneficiaries in the facility.  This was against Salvation Army policies.  Plaintiff immediately reported what he had heard to Defendant Nelson.  An investigation was launched.

Teeple Hall, LLP

6

24.   Plaintiff later discovered that Defendant Nelson had known that Ms. Lycan had been having sex with beneficiaries for over a month before Plaintiff reported the conduct to him.  When Plaintiff asked Defendant Nelson why he had not reported the conduct previously, Defendant Nelson responded that he did not need to get his "hands dirty with a whore" due to a lawsuit pending against him. Defendant Nelson also told Plaintiff that Plaintiff could be terminated if he shared any conversations between them with anyone.

25.   As part of the investigation, Plaintiff was asked to meet with an investigator.  Defendant Nelson instructed Plaintiff to report alleged inappropriate actions by Ms. Lycan that he had not seen.  Plaintiff was also instructed to share with Defendant Nelson all information Plaintiff learned from the investigator, despite that the investigator informed Plaintiff all such information was to remain confidential.

26.   After meeting with the investigator, Defendant Nelson instructed Plaintiff to come with him in his car.  Defendant Nelson informed Plaintiff after he started driving that he was taking Plaintiff to Ms. Lycan's home to "try and catch her messing around with beneficiaries at her home."  Plaintiff asked Defendant Nelson if they could get in trouble for this, especially since the investigation had been launched.  Defendant Nelson responded "who's going to tell, you? I don't think so, right?"  Plaintiff perceived Defendant Nelson's statement as a threat.

27.   Ms. Lycan was eventually terminated.  In late 2012, after Ms. Lycan had been terminated, Defendant Nelson told Plaintiff that she had become "a stripper and a whore" after she left the Salvation Army.

28.   Defendant Nelson also told Plaintiff about visiting a Korean bath house during a Salvation Army business trip and commented that "Koreans have very small dicks".  Defendant Nelson used his fingers to indicate how small Korean's penises were, stating "every Korean there had a small package.  I felt pretty good about myself."  Defendant Nelson continued, "I better never hear you

7

Teeple Hall, LLP

saying anything to Commander Chang about this, you wouldn't last long sharing conversations I have shared with you, especially about the Commander's dick.  If you ever share what I told you anyone, especially [Commander Chang], I'll deny it and you'll be on your way out."

29.    On several occasions, Defendant Nelson questioned Plaintiff about a ring Plaintiff wore with Hebrew writing on it.  Plaintiff told Defendant Nelson it was a religious ring that had special meaning to Plaintiff.  Defendant Nelson said that the ring "told everyone [Plaintiff] was gay" and that people would "look at the writing and think it is some gay information telling the boys in the bar that Plaintiff was single".

30.    Defendant Nelson told Plaintiff that Plaintiff and a male warehouse worker "would make a cute couple", again referring to the ring.  Plaintiff stopped wearing the ring after that point, so that he would not have to suffer Defendant Nelson's harassment.

31.    Defendant Nelson frequently offered Plaintiff pornography that he had confiscated from men in the rehabilitation center.

32.    In or about July 20, 2011, Defendant Nelson sent Plaintiff a highly offensive e-mail where he had personally recorded a song about a young girl who was, in his words "a retard" or a "re-re", who took a vibrator out of her purse in church.  Thereafter, Defendant Nelson sent Plaintiff an e-mail titled "something awesome".  Attached to the email was an audio of Defendant Nelson singing a song which  contained the following words and statements:

 "This re-re in my church likes to sing on her microphone…

This re-re in my church likes to sing on her microphone…

This re-re in my church likes to sing on her microphone…

But she pulls out her vibrator, her vibrator, her vibrator, her vibrator…

This re-re in my church likes to sing on her microphone"

Teeple Hall, LLP

Plaintiff told Defendant Nelson that he had a physically and mentally handicapped cousin and did not think the song was funny. Defendant Nelson laughed.

33.     In August 2011, Defendant Nelson criticized Plaintiff's hiring a female store manager for the Salvation Army Glendale store because of her looks. Defendant Nelson said "Dude she is disgusting, why did you hire her? Did she move you in some way?"

34.     Defendant Nelson described Major Chuck Fowler ("Major Fowler"), who was to take over for Defendant Nelson, as "a big fat dude with a bigger wife. You'll see." Later in the week when Plaintiff met Major Fowler and his wife, Defendant Nelson said to Plaintiff "Can you imagine going to bed with that every night? She'd lay on top of you and kill you David." Plaintiff was offended. Defendant Nelson laughed.

35.     Plaintiff was promoted to Administrator of the Salvation Army San Bernardino ARC in February 2012. Defendant Nelson was promoted to the Western Territory command headquarters at approximately the same time, and continued to be Plaintiff's direct report supervisor. After Defendant Nelson was promoted Plaintiff had less contact with him than he had prior to the promotion. However, whenever Plaintiff and Defendant Nelson were together the sexual innuendo was a constant.

36.     During Plaintiff's fall 2012 review, Defendant Nelson asked Plaintiff "What do you think of your dike Manager in Hesperia (Flora), I know Regina (MacFarland, the Salvation Army Director of Retail in San Bernardino) is riding that." At the time, Plaintiff was not aware of any relationship between the two, which would be against Salvation Army policies as Ms. MacFarland supervised Flora.

37.     Ms. MacFarland reported directly to Plaintiff. In January 2013, Plaintiff called Defendant Nelson to report he had been informed by Salvation

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

Army employees he supervised that they had seen Ms. McFarland kissing Flora in a bar.  Defendant Nelson laughed and responded that Flora "looks like a dude and probably could kick my ass." Defendant Nelson told Plaintiff to report what he had been told to human resources because it was something he did not want [his] name attached to because "[Ms. MacFarland] is a black, gay female, that's got problems for me written all over it; I don't want any part of that!"

38.     Plaintiff reported the relationship to Barbara Hanson, Salvation Army Head of Western Territory Human Resources ("Ms. Hanson"), who told Plaintiff she was aware of the relationship but that Plaintiff should do nothing.

### B. Nelson Instructs Plaintiff to Fire Individuals on the Basis of their Race

39.     Over the time Defendant Nelson supervised Plaintiff, he continuously instructed Plaintiff to discipline or terminate minority Salvation Army employees based on their race.  Defendant Nelson threatened Plaintiff with termination if Plaintiff did not discipline or terminate the workers as instructed.

40.     By way of example, shortly after Plaintiff began working for the Salvation Army, Defendant Nelson commented on a Salvation Army employee Eugene Davidson saying, "Eugene is a lazy loser and a thief. I don't trust any of those black drivers he hangs out with; he's their leader and they are all stealing." Defendant Nelson similarly told Plaintiff to "keep an eye" on Bridgette Davidson, an hourly worker at the Salvation Army Covina Store who reported to Plaintiff saying "She is a loser, another one of those lazy blacks, she's Eugene's wife so watch her and try to work her out of the system."

41.     On another occasion Defendant Nelson also told Plaintiff to "keep an eye on Johnny, he's the black kid taking donations.  They're all stealing.  I need you to deal with them, they're causing me problems and I don't need that."

42.     At all times Plaintiff was unaware of any misconduct by any of the people Defendant Nelson asked Plaintiff to discipline or terminate.  Plaintiff asked if any of the people had a review or write-up that would indicate potential problems.

Teeple Hall, LLP

Defendant Nelson responded "Who cares, just make them go away, this is the Salvation Army I don't need an excuse to get rid of people."

43. Plaintiff was impressed with Ms. Davidson and Johnny's work habits and had a positive working relationship with both of them. Plaintiff never wrote either of them up because he never had reason to do so. This upset Defendant Nelson, who told Plaintiff many times he needed to follow his orders to "get rid of these people" and that he would "never go anywhere at the Salvation Army if I [Defendant Nelson] don't support it."

44. In July 2011, Defendant Nelson instructed Plaintiff to send him an email describing what a good administrator he was and that it bothered Plaintiff that "these blacks," specifically Eugene and Bridgette Davidson, were saying he is a racist. Defendant Nelson said Plaintiff's e-mail would help his case since Plaintiff worked with him and spent "more time than any of [the people accusing him of discrimination] do." Defendant Nelson threatened that if Plaintiff ever told anyone what Defendant Nelson had told him to do, Defendant Nelson would deny it and Plaintiff would lose his job.

45. Shortly thereafter, Defendant Nelson walked Plaintiff around the warehouse, commented on a few of the African American drivers, one in particular he tells Plaintiff that, "See that fat dude? He needs to be gone, and you need to get rid of him. He's just another fat lazy black guy that sweats a lot. Look at his big fat ass. Do you think he actually gets out of his truck on pick-ups? There's no way he moves his butt out of the truck. He's messing with my productivity and probably stealing from me."

46. On another occasion Defendant Nelson said "What ever happened with Johnny in Covina? He's not still there stealing, is he? I need Johnny and Bridgette gone David, unless you are okay with lazy blacks that steal."

47. Plaintiff told Defendant Nelson that he would not fire an employee based upon race. Plaintiff also told Defendant Nelson he had not seen or heard

Teeple Hall, LLP

Teeple Hall, LLP

anything negative about Johnny.  Defendant Nelson said, "You need to get rid of him.  Do what I tell you to do and I'll always back you.  Cross me and you will be gone."  Plaintiff refused to write Johnny up as he had no cause to do so.

48.     Bridgette Davidson came to work at the warehouse in Pasadena in approximately fall of 2011.  Defendant Nelson asked why he had not seen a write-up for Bridgette and told Plaintiff he was disobeying his orders by failing to write her up.  When Plaintiff stated that she had not done anything to justify a write-up, Defendant Nelson responded "This is the Salvation Army David, you don't need anything to get rid of someone, but I need to keep my hands clean in all this if I'm to move up.  Plus, I'll have Barbara (the warehouse supervisor) back you up.  There's no way I'm putting my name on the bitch, her and her husband are losers! You have to be smart dealing with people you want out, don't have your name attached to them. You will never hear about [Commander Chang] getting involved in firing someone, he lets his people do it so it doesn't affect him." Plaintiff never wrote any of the people Defendant Nelson ordered him to discipline up and refused to terminate them.  Defendant Nelson was very angry with Plaintiff about this.

### C. Plaintiff Attempted to Complain to Human Resources About Defendant Nelson's Misconduct

49.     Following these incidents in 2011, Plaintiff contacted Christina Morales, the Salvation Army Human Resources manager in Pasadena ("Ms. Morales"), regarding Defendant Nelson on numerous occasions.  On one specific occasion, Ms. Morales responded that "You're going to hear and see a number of things that you wouldn't hear or see in a normal workplace.  You have to understand that officers are treated different and run their ARC's without much guidance, especially someone like Nelson who has the ear of the Commander.  David, please don't challenge them, you belong here and retail needs you!" Ms. Morales suggested Plaintiff "leave what [Nelson] says alone" and that Plaintiff "keep minding [his] own business."  To Plaintiff's knowledge, neither Ms. Morales nor

anyone from Salvation Army human resources performed any investigation into his complaints.

50.   When Plaintiff confronted Defendant Nelson about inappropriate conduct, Defendant Nelson informed Plaintiff that he could be terminated if he ever shared the sexual and racial jokes, the email song about the mentally retarded girl, or anything else Defendant Nelson told him with anyone. When Plaintiff questioned Defendant Nelson about his inappropriate comments, he responded "I can't be fired because of the generational background my wife and I have with the Salvation Army, if they don't like us, they just move us around. I want to be the Commander someday, and will be. I've said worst stuff than that; no one says a thing.  If they do, it's taken care of."

### Plaintiff's Retaliatory Termination

51.   Plaintiff contacted Ms. Morales at Salvation Army human resources approximately three to four times during his time at the Pasadena ARC about Defendant Nelson's sexual harassment and direction to discipline or fire minority Salvation Army employees due to their race.  Each time, Ms. Morales instructed Plaintiff to ignore Defendant Nelson's conduct.

52.   After Plaintiff was promoted to Administrator of the Salvation Army San Bernardino ARC, Plaintiff contacted Ms. Hanson at human resources on one to two occasions to discuss Defendant Nelson's pattern of sexual and racial discrimination as discussed herein.  Again, the Salvation Army took no action.

53.   In addition to human resources, Plaintiff discussed Defendant Nelson's inappropriate conduct with Major Edward Convert in March 2013.  Major Covert instructed Plaintiff not to go to human resources, but to speak with Defendant Nelson directly.

54.   In late November or early December 2013, Plaintiff met with Major Locker, the head officer auditing his ARC.  Plaintiff detailed his concerns about Defendant Nelson's sexual harassment and racial discrimination as described herein

Teeple Hall, LLP

to Major Locker.  Plaintiff also told Major Locker about Defendant Nelson's threat of termination if Plaintiff did not discipline and terminate the Salvation Army employees as Defendant Nelson ordered.  Major Locker told Plaintiff that he "should not go above Major Nelson's head" and that, as Ms. Hanson in human resources reported to Defendant Nelson, it was "not a good idea to go to human resources."

55.    Major Locker told Plaintiff that "We have given you the best rating and review we have ever given in all out years as auditors; you all should be very proud of what you've accomplished here."

56.    On April 11, 2014 at approximately 5:05 p.m., Plaintiff called and left a voicemail for Ms. Hanson in human resources.  Plaintiff told Ms. Hanson that an employee he supervised, James Taylor ("Mr. Taylor") had informed Plaintiff that Defendant Nelson had contacted Mr. Taylor about Plaintiff's performance, particularly whether there was anything Plaintiff was doing wrong that Mr. Taylor wanted to share with Defendant Nelson.  Plaintiff was concerned Defendant Nelson was looking for a reason to fire Plaintiff due to his complaints against Defendant Nelson.  Ms. Hanson never returned Plaintiff's call.

57.    Defendant Nelson called Plaintiff three days later to question him about talking to human resources about him, specifically asking if Plaintiff had ever said anything to Ms. Hanson about him.  Defendant Nelson inquired whether Plaintiff had deleted all emails and texts Defendant Nelson sent him as instructed and threatened to terminate Plaintiff's employment at the Salvation Army. Defendant Nelson ended the conversation by stating "David, you know that it could be career ending going up against an Officer?"

58.    In April 2014 Plaintiff was working on a special committee with Commander Chang that was tasked with brainstorming ideas for future Salvation Army projects.  Defendant Nelson reminded Plaintiff that going to Commander Chang about any of the statements or things Defendant Nelson had done or said

Brodmann v. Salvation Army, Inc., et al.                                                    Case No.
Claims for Relief and Demand for Jury Trial

Teeple Hall, LLP

should not be something Plaintiff "should even think about doing." Plaintiff told Defendant Nelson he would resign from the special committee. Defendant Nelson reminded Plaintiff "No one comes against me. You more than anyone else should know that David."

59. Plaintiff was asked by Major Covert, Major Looker and Major Graziani not to go to Human Resources to address this and other problems with Defendant Nelson because it was against Salvation Army protocol to report an officer and could be damaging to Plaintiff's career at Salvation Army.

60. Approximately three months after this conversation, and one week after receiving an "Exceeds Expectations" on his quarterly evaluation, Plaintiff was terminated.

61. Unbeknownst to Plaintiff at the time, Plaintiff's review had been 'updated' the day Salvation Army e-mailed it to Plaintiff which was weeks after Plaintiff had requested a copy of it. Immediately after Plaintiff's review, he had signed the review which listed a with a review score of 4.67 out of 5. The review was later modified without Plaintiff's knowledge. The review Plaintiff was sent after his termination indicated that it was modified the day it was sent to Plaintiff, and now included a reference to Plaintiff's failure to follow Salvation Army policy. The review Plaintiff received contained no references to failing to follow Salvation Army policy.

62. On July 19, 2014, Plaintiff was asked by Defendant Nelson to come to command headquarters to meet about his new position, Director of Special Projects. Plaintiff was excited for the call since he had not heard from anyone concerning this position since Plaintiff had confronted Defendant Nelson about Defendant Nelson demeaning and seeking negative information about Plaintiff.

63. This meeting never occurred. Instead, Ms. Hanson called Plaintiff into her office at command headquarters and asked him to tell her about Bryan Foley. Plaintiff understood that Mr. Foley had been a salvation beneficiary working

Brodmann v. Salvation Army, Inc., et al.                                        Case No.
Claims for Relief and Demand for Jury Trial

primarily with maintenance during his rehabilitation.  Plaintiff told Ms. Hanson that, after Mr. Foley had graduated from the rehabilitation program, the Salvation Army had attempted to hire him as a furniture refinisher but was unable to do so because Mr. Foley did not have a valid driver's license, which was requirement to be hired as a Salvation Army employee.  Plaintiff spoke about Mr. Foley with Mr. Taylor, the production manager for the Salvation Army San Bernardino ARC.  Mr. Taylor told Plaintiff that the Salvation Army contracted with people in situations similar to that of Mr. Foley as "independent vendors" and suggested that the Salvation Army should hire Mr. Foley as an independent vendor as well.

64.     In early October 2013, Mr. Taylor emailed human resources about Mr. Foley's vendor background check and was granted permission to hire Mr. Foley an independent vendor.

65.     Ms. Hanson told Plaintiff that he had put the Salvation Army "at risk" by hiring Mr. Foley as an independent vendor.  She further told Plaintiff that Plaintiff was to be terminated for failing to follow Salvation Army policy with respect to independent vendor.   Plaintiff was terminated "for cause".

66.     The grounds given for Plaintiff's "for cause" termination are untrue. In truth, Plaintiff was terminated because of his repeated complaints about Defendant Nelson and his repeated refusal to support the policy of sexual harassment and racial discrimination Defendant Nelson practiced while he supervised Plaintiff at the Salvation Army.

67.     Since this termination, Plaintiff has been unable to obtain other employment.  Plaintiff's "for-cause" termination from the Salvation Army has caused potential employers to summarily reject him, despite a stellar record while employed by the Salvation Army.

Brodmann v. Salvation Army, Inc., et al.                                          Case No.
Claims for Relief and Demand for Jury Trial

# FIRST CLAIM FOR RELIEF
## WRONGFUL TERMINATION IN VIOLATION PUBLIC POLICY
### (U.S.C. §1981)

68.     Plaintiff incorporates by reference all prior paragraphs in this Claims for Relief as if fully set forth herein.

69.     By the conduct described above, Salvation Army intentionally deprived Plaintiff, who is white, of the same rights as are enjoyed by other citizens in the creation, performance, enjoyments, and all benefits and privileges, of his contractual employment relationship with the Salvation Army in violation of 42 U.S.C. § 1981 because he objected to racial discrimination at the Salvation Army, because he was deprived of a discrimination free workplace, and because he refused to discipline or terminate Salvation Army non-white minority employees he supervised based on their race, as ordered by Defendant Nelson.

70.     Plaintiff has standing to sue under U.S.C. § 1981 because he was punished for trying to vindicate the rights of, and would not participate in discrimination against, non-white minorities at the Salvation Army.

71.     Defendant Salvation Army's termination of Plaintiff is in violation of the rights afforded him by the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Action of 1991.

72.     Plaintiff was terminated, among other things, in retaliation for trying to vindicate the rights of non-white persons at the Salvation Army.

73.     As a direct, foreseeable, and proximate result of the Salvation Army's discriminatory acts, Plaintiff has lost and will continue to lose income and benefits, and has suffered and will continue to suffer humiliation, embarrassment, mental and emotional distress, apprehension, fear, ordeal and discomfort in an amount to be proven at trial.

74.     As a direct, foreseeable, and proximate result of Defendant Salvation Army's discriminatory acts, Plaintiff lost employment opportunities.

75.     Defendants Salvation Army and Nelson acted with malice and oppression and as a result Plaintiff is entitled to punitive damages.

76.     The foregoing sums do not include the attorneys' fees and costs incurred by Plaintiff.  Plaintiff has retained an attorney to prosecute this litigation and is entitled to an award of reasonable attorney fees and costs.

## SECOND CLAIM FOR RELIEF
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
## (ARTICLE I, §§ 4 AND 8 OF THE CALIFORNIA CONSTITUTION)

77.     Plaintiff incorporates by reference all prior paragraphs in this Claims for Relief as if fully set forth herein.

78.     The California Constitution, Art. I, § 8 provides that "A person shall not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

79.     The California Constitution, Art. I, § 4 provides that "Free exercise and enjoyment of religion without discrimination are guaranteed."

80.     Plaintiff objected on religious and moral grounds to Defendant Salvation Army's request that he discriminate, reprimand and terminate African-American and Latino employees based on their race.  Plaintiff's failure to comply with said request was a motivating reason for Defendant Salvation Army's decision to fire him and, therefore, his rights were violated under the California Constitution.

81.     As a direct, foreseeable, and proximate result of Defendants' discriminatory acts, Plaintiff has lost and will continue to lose income and benefits, and has suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, apprehension, fear, ordeal and discomfort, in an amount to be proven at trial.

82.     As a direct, foreseeable, and proximate result of Defendants' discriminatory acts, Plaintiff has lost employment opportunities.

Brodmann v. Salvation Army, Inc., et al.                                          Case No.
Claims for Relief and Demand for Jury Trial

Teeple Hall, LLP

83.   Defendants Salvation Army and Nelson acted with malice and oppression and as a result Plaintiff is entitled to punitive damages.

84.   The foregoing sums do not include the attorneys' fees and costs incurred by Plaintiff.  Plaintiff has retained an attorney to prosecute this litigation and is entitled to an award of reasonable attorney fees and costs.

### THIRD CLAIM FOR RELIEF
### HOSTILE WORK ENVIRONMENT BASED ON RACE AND SEX
### IN VIOLATION OF U.S.C. §1981

85.   Plaintiff incorporates by reference in prior paragraphs in this Claims for Relief as if fully set forth herein.

86.   Defendants Salvation Army and Nelson's discrimination against and mistreatment of Plaintiff is in violation of the rights afforded him by the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Action of 1991.

87.   By the conduct described above, Defendant Salvation Army and Defendant Nelson intentionally deprived Plaintiff, who is white, of the same rights as are enjoyed by other citizens in the creation, performance, enjoyments, and all benefits and privileges, of their contractual employment relationship with the Salvation Army in violation of 42 U.S.C. § 1981 because Plaintiff refused to discipline or terminate non-white minority Salvation Army employees he supervised based on their race, as ordered by Defendant Nelson.  Plaintiff was also terminated because he attempted to vindicate the rights of minorities and women protected under U.S.C. § 1981.

88.   As a result of Defendants Salvation Army and Nelson's discrimination in violation of §1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and he has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Salvation Army and Defendant Nelson's actions, thereby entitling him to damages.

Brodmann v. Salvation Army, Inc., et al.                                Case No.
Claims for Relief and Demand for Jury Trial

89.    Defendant Nelson's conduct, on behalf of Defendant Salvation Army includes firing Plaintiff, in part because Plaintiff failed to fire African-American and Latino employees for no reason other than their race.  Defendant Nelson's conduct also included making demeaning and discriminatory comments about African-American and Latino employees, openly mocking Plaintiff for wearing religious items and engaging in offensive name-calling for wearing such items. Defendant Nelson's conduct also included making demeaning and discriminatory comments about women, and openly mocking Plaintiff for declining offers for pornography and failing to participate in demeaning conversations about women.

90.    Defendants Salvation Army and Nelson acted with malice and oppression and as a result Plaintiff is entitled to punitive damages.

91.    The foregoing sums do not include the attorneys' fees and costs incurred by Plaintiff.  Plaintiff has retained an attorney to prosecute this litigation and is entitled to an award of reasonable attorney fees and costs.

**FOURTH CLAIM FOR RELIEF**

**DISCRIMINATION BASED ON RELIGION IN VIOLATION OF ARTICLE I, §§ 4 AND 8 OF THE CALIFORNIA CONSTITUTION**

92.    Plaintiff incorporates by reference all prior paragraphs in this Claims for Relief as if fully set forth herein.

93.    The California Constitution, Art. I, § 4 provides that "Free exercise and enjoyment of religion without discrimination are guaranteed."

94.    The California Constitution, Art. I, § 8 provides that "A person shall not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, Creed, color, or national or ethnic origin."

95.    Defendant Nelson's conduct, on behalf of Defendant Salvation Army, includes telling Plaintiff that his religious beliefs were interfering with his job because his religious beliefs prohibited him from giving unwarranted bad reviews of or terminating Salvation Army employees he supervised because of their race.

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

As a result of Plaintiff refusing to discriminate against minority Salvation Army employees he supervised, Plaintiff was terminated from his employment with the Salvation Army. Plaintiff's termination violated his right not to be discriminated against based upon his religion under the California Constitution.

96. Defendant Nelson's conduct, on behalf of Defendant Salvation Army includes firing Plaintiff, in part because Plaintiff's religious beliefs prohibited him from firing African-American and Latino employees for no reason other than their race. Defendant Nelson's conduct also included openly mocking Plaintiff for wearing religious items, and for declining offers for pornography and failing to participate in demeaning conversations about women.

97. As a direct, foreseeable, and proximate result of Defendant Salvation Army's discriminatory acts, Plaintiff has lost and will continue to lose income and benefits, and have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress, and discomfort in an amount to be proven at trial.

98. As a direct, foreseeable, and proximate result of Defendant Salvation Army's discriminatory acts, Plaintiff has lost employment opportunities.

99. Defendant Salvation Army's violations of Plaintiff's rights under Article I, § 4 of the California Constitution caused him to suffer harm, including emotional distress and economic loss.

100. Defendants Salvation Army and Nelson acted with malice and oppression and as a result Plaintiff is entitled to punitive damages.

101. The foregoing sums do not include the attorneys' fees and costs incurred by Plaintiff. Plaintiff has retained an attorney to prosecute this litigation and is entitled to an award of reasonable attorney fees and costs.

## FIFTH CLAIM FOR RELIEF

## RETALIATION BASED ON RACE IN VIOLATION OF U.S.C. §1981

102. Plaintiff incorporates by reference all prior paragraphs in this Claims for Relief as if fully set forth herein.

Teeple Hall, LLP

103.   By the conduct described above, Defendants Salvation Army and Nelson intentionally deprived Plaintiff, who tried to help, and who refused to discriminate against employees, who were African American and Hispanic and were victims of race discrimination, of the same rights as are enjoyed by white citizens in the creation, performance, enjoyments, and all benefits and privileges, of his contractual employment relationship with the Salvation Army in violation of 42 U.S.C. §1981.

104.   As a result of Defendants Salvation Army and Nelson's retaliation in violation of § 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and he has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Salvation Army and Nelson's actions, thereby entitling him to compensatory damages.

105.   Defendants Salvation Army and Nelson acted with malice and oppression and as a result Plaintiff is entitled to punitive damages.

106.   The foregoing sums do not include the attorneys' fees and costs incurred by Plaintiff.  Plaintiff has retained an attorney to prosecute this litigation and is entitled to an award of reasonable attorney fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, damages for emotional distress and pain and suffering, according to proof as allowed by law;

2. For punitive damages as allowed by law;

3. For an award to Plaintiff of costs of suit incurred herein and reasonable attorneys' fees;

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

4.  For an award of prejudgment and post-judgment interest; and,

5.  For an award to Plaintiff of such other and further legal and equitable relief as the Court deems just and proper.

Dated:  April 24, 2015                         TEEPLE HALL, LLP


                                    By:    /s/  Gregory M. Garrison
                                           Gregory M. Garrison, Esq.
                                           Grant G. Teeple, Esq.
                                           Julia M. Williams, Esq.
                                           Attorneys for Plaintiff DAVID N.
                                           BRODMANN

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

1

**JURY DEMAND**

2

Plaintiff DAVID N. BRODMANN hereby demands trial by jury.

3

4

Dated:  April 24, 2015                          TEEPLE HALL, LLP

5

6                                        By:    */s/  Gregory M. Garrison*
                                                Gregory M. Garrison, Esq.
7                                               Grant G. Teeple, Esq.
                                                Julia M. Williams, Esq.
8                                               Attorneys for Plaintiff DAVID N.
                                                BRODMANN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Teeple Hall, LLP*

Brodmann v. Salvation Army, Inc., et al.                                    Case No.
Claims for Relief and Demand for Jury Trial

# Exhibit "A"

# Exhibit "A"

EEOC Form 161-B (11/09)

**U.S. E**QUAL **E**MPLOYMENT **O**PPORTUNITY **C**OMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:   **David N. Brodmann**<br>**41907 Canon Court**<br>**Murrieta, CA 92562** | From:   **Los Angeles District Office**<br>**255 E. Temple St. 4th Floor**<br><br>**Los Angeles, CA 90012** |

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **480-2015-00984** | **John H. Sohn,**<br>**Intake Supervisor** | **(213) 894-1090** |

*(See also the additional information enclosed with this form.)*

**N**OTICE TO THE **P**ERSON **A**GGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** WITHIN 90 DAYS **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☒   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** WITHIN **90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** more than 2 years (3 years) **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Rosa M. Viramontes*                      3/26/2015

**Rosa M. Viramontes,**                      *(Date Mailed)*
**District Director**

Enclosures(s)

cc:   **Human  Resources Manager**
**Manager**
**THE SALVATION ARMY**
**24201 Orange Avenue**
**Perris, CA  92570**

**Teeple Hall, LLP**
**Attorneys At Law**
**Julia M. Williams, Esq**
**9255 Towne Centre Dr., Suite 500**
**San Diego, CA  92121**

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you **receive this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*